ROBINS *v.* DONOVAN CREEK DRAINAGE DIST. No. 2, *et al.*\*

(Division A. Jan. 28, 1929.)

[120 So. 184. No. 27465.]

\*Corpus Juris-Cyc References: Drains, 19CJ, section 183, p. 693, n. 74; section 230, p. 729, n. 54; section 275, p. 753, n. 61.

*Bolton & Monaghan,* for appellant.

874

*W. C. Sweat,* for appellees.

Argued orally by *C. R. Bolton*, for appellant, and *W. C. Sweat*, for appellee.

Cook, J.  Appellant, D. W. Robins, filed a bill in the chancery court of Prentiss county against the Donovan Creek drainage district No. 2 òf Prentiss county, and the owners of lands in said district, alleging that, on the 7th day of April, 1920, said drainage district was organized by the board of supervisors of Prentiss county under the provisions of chapter 195 of the Laws of 1912, and chapter 269 of the Laws of 1914, and the amendments

thereto, a general description of all the lands embraced in the district being set forth in the bill of complaint; that commissioners were appointed, and they entered into a contract with appellant for the construction of a drainage canal for said district, which contract was approved by the board of supervisors; that, under said contract, instead of issuing bonds to raise funds with which to pay for said work, they agreed to give appellant four notes in the aggregate sum of twenty thousand one hundred forty-one dollars and thirty cents in payment for said work, which procedure is expressly authorized by chapter 269 of the Laws of 1914; that the appellant performed said contract, and the promissory notes of the district were executed and delivered to him; that there was a balance due on said notes of six thousand two hundred forty-three dollars and twenty-three cents on March 1, 1927, and that there were no funds in the treasury with which to pay this balance, and that the district is making no effort to raise any money to pay off and discharge this balance so due to the appellant.

The bill further alleged that in the organization of the district the engineer estimated the cost of construction of the canal at sixteen thousand sixty-seven dollars and eighty-nine cents, and the commissioners made an assessment on the land of the district on the basis of such estimate and reported it to the board of supervisors for confirmation, and this assessment was approved; that said assessments were not based on the actual benefits received, and did not, in reality, and were not intended to, represent the real benefits to the land, but only the proportionate part of the cost of the entire canal which should be borne by each particular tract of land; that, when said commissioners advertised for bids, the estimate of the engineer was found to be wholly inadequate, and that the work could not be done for that amount; that the lowest bid obtained was that of the appellant

for the sum of twenty thousand one hundred forty-one dollars and thirty cents, which bid was for a somewhat larger ditch, but one that was cheaper to construct, and which provided additional benefits; that a part of the landowners, recognizing the additional benefits, petitioned the commissioners to let said contract to the appellant, and, thereafter the contract was let to him, and was ratified and confirmed by the board of 'supervisors; that the certificates of indebtedness issued and delivered to complainant recited that all necessary steps for the payment of said indebtedness had been provided; and that the commissioners agreed, among themselves, to raise the assessments of lands in the district to eighteen dollars and eighty-five cents per acre, but no formal order to that effect was ever entered on the minutes of the board of supervisors.

The bill further alleged that the acts and proceedings of the board of supervisors and the drainage commissioners, both in the organization of the district, and in the issuance of the bonds or certificates of indebtedness, were validated by acts of the legislature in chapter 295, Laws of 1922, chapter 225, Laws of 1924, and chapter 280, Laws of 1926; and that the district was a duly and legally organized district, and the bonds or evidences of indebtedness became and were incontestable, legal, binding, and subsisting obligations of the district. It was further alleged that various landowners and taxpayers had paid various amounts and proportionate parts of the assessment on lands owned by them, some having paid all of the *pro-rata* part of the assessment against the land owned by them, if the assessments bear the same proportion to the other lands as in the original assessments, and others had paid nothing or practically nothing; that no efforts were being made by the commissioners of the district to collect any funds with which to discharge the indebtedness of the district; that the evidences of indebt-

edness held by appellant are obligations of the entire district, and the lands and resources of the entire district are bound for the payment of said indebtedness, and that, while the rights of the landowners among themselves may be diverse and varied, such, in no wise, affects the rights of the holder of the indebtedness to collect it from the entire district.

The bill of complaint makes each landowner in the district a party defendant, and prays for a decree against the district for the indebtedness due; that a lien be established and declared on the lands embraced in said district to secure the payment of said account; that the court order said lands, or so much thereof as may be necessary, to be sold to raise sufficient funds to pay off and discharge said indebtedness, and that a commissioner be appointed to sell said lands.

To this bill of complaint, certain landowners interposed a demurrer assigning the following grounds: "1st. There is no equity in the face of the bill. 2nd. The bill is multifarious. 3rd. The bill shows on its face that this court has no jurisdiction to hear matters therein attempted to be litigated. 4th. The bill shows on its face that these parties are in no manner obligated to pay the alleged notes or certificates of indebtedness. 5th. The bill shows on its face that the alleged notes, if they can be collected at all, cannot be collected in the manner attempted by the bill. 6th. The bill shows on its face that there is no lien on the lands of these defendants, and that the court has no right to fix a lien thereon. 7th. The bill shows on its face that the court cannot order a sale of the lands to pay the alleged indebtedness. 8th. The complainant has a plain, adequate and complete remedy at law."

The court below, after hearing the cause on this demurrer to the bill of complaint, sustained it, and granted

an appeal to this court to settle the principles of the case.

The statutory provisions, upon which the appellant seeks to ground the jurisdiction of the chancery court to impose a lien on the lands of the district and sell so much of said lands as may be necessary to pay the indebtedness due to him, are section 3 of chapter 269 of the Laws of 1914 (section 4951, Hemingway's 1927 Code), section 14 of chapter 269 of the Laws of 1914, amending section 24, chapter 195, Laws of 1912 (section 4988, Hemingway's 1927 Code), and section 15, chapter 269, Laws of 1914, amending section 25, chapter 195, Laws of 1912 (section 4989, Hemingway's 1927 Code).

Section 24 of chapter 195 of the Laws of 1912, as amended by section 14 of chapter 269 of the Laws of 1914, provides, in part, as follows: "That all bonds and evidences of indebtedness issued by the commissioners under the terms of this act shall be secured by a lien on all lands, and railroads subject to taxation under this act, in an amount not to exceed the amount of benefits assessed against such lands and railroads, and the board of commissioners shall see to it that an assessment is levied annually, and collected under the provisions of this act, so long as it may be necessary for the payment of any bonds issued or obligations contracted under its authority, together with the interest thereon."

Section 25 of chapter 195 of the Laws of 1912, as amended by section 15 of chapter 269 of the Laws of 1914, provides in part as follows: "That to the payment of both principal and interest of the bonds and other negotiable evidences of debt to be issued under the provisions of this act, the entire revenues of the district, from any and all sources and all real estate and railroads subject to taxation in the district are by this act pledged, in an amount not to exceed the amount of betterments assessed against said lands and railroads; and the board

of commissioners is hereby required to set aside annually from the first revenues from any source whatever, a sufficient amount to secure and pay the interest on said bonds and evidences of indebtedness and a sinking fund for their ultimate retirement, if a sinking fund is provided for."

It is true, as appellant contends, that section 24 of chapter 195 of the Laws of 1912, as amended by section 14 of chapter 269 of the Laws of 1914, provides that all bonds and evidences of indebtedness issued by the commissioners, under the terms of this act, shall be secured by a lien on all lands and railroads subject to taxation under the act, and that section 25 of chapter 195, of the Laws of 1912, as amended by section 15 of chapter 269 of the Laws of 1914, provides that, to the payment of both principal and interest of the bonds and other negotiable evidences of debt to be issued under the provisions of the act, the entire revenues of the district from any and all sources and any and all real estate and railroads subject to taxation are pledged; but the appellant fails to quote and give effect to the limitations found in each of these sections upon the extent and effect of the lien created and the revenues and public property pledged for the payment of such debt. By the express provisions of section 14 of chapter 269 of the Laws of 1914, the evidences of indebtedness issued by commissioners under the terms of the act are secured by a lien on all lands and railroads subject to taxation under the act "in an amount not to exceed the amount of benefits assessed against such lands and railroads," while, by the provisions of section 15 of said act, the entire revenue of the district and all real estate and railroads subject to taxation are pledged to the payment of principal and interest of the bonds or other negotiable evidences of debt under the provisions of the act "in an amount not to exceed the amount of betterments assessed

against said lands and railroads.'' These limitations upon the extent and effect of the lien securing the bonds and evidences of indebtedness of the district do not appear in sections 24 and 25 of chapter 195, Laws of 1912, but were inserted by the legislature when these sections were amended by sections 14 and 15 of chapter 269 of the Laws of 1914.

It will thus be noted that by the provisions of these sections the lien created, and the pledge of the revenue and property of the district for the payment of the evidences of debt issued by the district are expressly limited to the amount of benefits or betterments assessed against the land and property of the district, and that, for the collection of revenues to pay such indebtedness and discharge the lien and pledge, the act, itself provides a complete scheme. Section 24 of chapter 195 of the Laws of 1912, as amended by section 14 of chapter 269 of the Laws of 1914 (section 4988, Hemingway's 1927 Code), requires that the drainage commissioners shall see to it that an assessment is levied annually and collected under the provisions of the act so long as it may be necessary for the payment of any bonds issued or obligations contracted under its authority, together with the interest thereon.

Section 9, chapter 195, Laws of 1912, as amended by section 8 of chapter 269 of the Laws of 1914, provides as follows: ''That the board of supervisors shall at the same time that the assessment of benefits is filed, or at any subsequent time, when called upon by the board of commissioners of the district so to do, enter upon its minutes an order which shall have all the force of a judgment providing that there shall be assessed upon the real property of the district a special assessment, or levy, to pay the estimated cost of the improvement, with not less than ten per cent. added for unforeseen contingencies, the amount to be assessed upon each tract of land included

within the district shall be such part of the estimated cost of the improvement as the assessment of benefits against such tract bears to the assessment of benefits against all the real property in the district. . . . The assessment or assessments so levied shall be a lien on all of the real property of the district from the time that the same is levied by the board of supervisors in an amount not to exceed the total amount of estimated benefits on all the real property in the district, and shall be entitled to preference to all demands, executions, encumbrances or liens whatsoever, and shall continue until such assessment, with any penalty and costs that may accrue thereon, shall have been paid. . . . It shall be the duty of the board of supervisors of each county to make an annual tax levy, at the same time when the county tax levy is made, or at any succeeding regular meeting, in an amount not exceeding the installment of assessment levied for that year sufficient to meet the obligations of the district.''

Section 23 of chapter 195, Laws of 1912, provides for the collection of the taxes levied for the payment and discharge of the obligations of the district, and for the sale of lands for delinquent taxes, and the redemption of lands sold for such delinquent taxes, the provisions being as follows: ''That all taxes levied under the terms of this Act shall be payable at the same time the state and county taxes are payable, and if any taxes levied by the board of supervisors in pursuance of this Act are not paid at maturity, the collector shall embrace such taxes in the taxes for which he shall sell the lands, together with twenty-five per cent damages, and shall advertise and sell such delinquent lands at the same time he is required to sell lands for the nonpayment of state taxes and make deeds to purchasers, which deeds shall have the same effect as deeds made to purchasers at tax sales, and the owners of lands so conveyed shall have the same

right to redeem same as he would have if said lands were sold for the non-payment of state and county taxes.''

The statutory lien on lands and the statutory pledge of revenues and property of the district are limited to the amount of benefits or betterments assessed against such land and property. After the assessment of benefits has been filed, it is made the duty of the board of supervisors, upon request of the board of commissioners, to enter an order on its minutes, providing that there shall be assessed upon the real property of the district a special assessment or levy to pay the estimated cost of the improvement with ten per cent additional for contingencies, the amount to be assessed upon each tract of land to be such part of the estimated cost of the improvement as the assessment of benefits against each tract of land bears to the assessments of benefits against all of the property in the district, and, by the express provisions of the statute, the assessment so levied is made a lien on all real property in the district from the date of the levy, in an amount not to exceed the total amount of the estimated benefits on all the real property in the district; and it is made the duty of the board of supervisors to make an annual tax levy to meet the obligations of the district. The taxes so levied under the act are required to be paid at the time that state and county taxes are payable, and, if such taxes are not paid, the tax collector is required to sell the delinquent lands at the same time that lands are sold for delinquent state and county taxes, and the taxpayer is given the same right to redeem such lands as he would have if the lands were not sold for nonpayment of state and county taxes. The method thus provided for the assessment and collection of revenue to pay and discharge the obligations of the district is complete, and, therefore, exclusive.

The bill of complaint shows that no levy of taxes to discharge the alleged indebtedness due to the appellant

has been made, and the chancery court had no jurisdiction to order a sale of the lands of the district to pay such indebtedness. The court below so held in sustaining the demurrer to the bill of complaint, and, therefore, the decree entered will be affirmed, and the cause remanded.

*Affirmed and remanded.*